```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

ANDRE JEFFRIES,                             11 Civ. 40 (JGK)

                    Petitioner,             MEMORANDUM
                                            OPINION AND ORDER
     -against-

WILLIAM A. LEE, SUPERINTENDENT,

                    Respondent.
_____
```

**JOHN G. KOELTL, District Judge:**

Andre Jeffries brings this pro se petition for a writ of habeas corpus pursuant to 28 USC § 2254.  The petitioner was convicted after pleading guilty in New York State Supreme Court, Bronx County, to Assault in the Second Degree in violation of N.Y. Penal Law § 120.05[1], and was sentenced as a persistent violent felony offender to a term of fourteen years to life imprisonment.  The judgment was entered on March 15, 2005.  The petitioner's conviction was affirmed on May 19, 2009, by the Appellate Division, First Department, and leave to appeal to the New York Court of Appeals was denied on August 17, 2009.  People v. Jeffries, 879 N.Y.S.2d 118 (App. Div. 2009), appeal denied, 914 N.E.2d 1017 (N.Y. 2009).  The petitioner subsequently made a motion for a writ of error coram nobis, which was denied by the Appellate Division, after which leave to appeal to the New York Court of Appeals was denied.

1

The petitioner challenges his conviction on the ground that he allegedly received ineffective assistance of appellate counsel. The petitioner claims that his appellate counsel erred by failing (1) to raise a Fourth Amendment violation claim on direct appeal and (2) to argue ineffective assistance of trial counsel.

## I.

Prior to his guilty plea, the defendant made a motion to suppress identification testimony as well as his statements to law enforcement officials. That motion was denied. The trial court made the following findings of fact in rejecting the petitioner's motion.

On March 2, 2002, while investigating a stabbing at Bronx Lebanon Hospital, Police Officer Mattison heard someone run past him yelling "help, help, someone get the police, get a doctor." (Killian Decl. Ex. 12 at 1 ("Suppression Op.")) Almost simultaneously, a doctor yelled to Mattison "get that guy" and pointed at the petitioner. Id. Officer Mattison also noticed a woman with blood on her mouth, face and hands. Id. Officer MAttison chased the petitioner through two sets of double doors and subsequently apprehended him. Id. at 2. Nearing the petitioner, Mattison noticed blood on the petitioner's hands and

coat.  Id.  Officer Mattison asked the petitioner "what are you doing," and the petitioner answered, "I didn't do anything."  Id.  Mattison then placed the petitioner under arrest, handcuffed him, and brought him back into the emergency room where a security officer informed Officer Mattison that the petitioner had assaulted a nurse.  Id.  When Officer Mattison located the victim, he asked her whether she could identify the individual who assaulted her, and she pointed to the petitioner.  Id.

On July 30, 2003, the trial court denied the suppression motion, finding that "[the] observations taken as a whole gave the officer more than probable cause to believe that a crime had been committed and that the [petitioner] had committed that crime".  Id. at 3.  The court also found that the show-up identification was not suggestive.  Id. at 4.  The petitioner then moved for dismissal based on a statutory speedy trial claim.  On October 31, 2004, the state supreme court found that the State was ready to proceed to trial within the statutory period, that there was no "impediment to the people proceeding to trial" and denied the petitioner's motion to dismiss.  The supreme court found that the State could be charged with a delay of one hundred and twelve days, safely within the statutory period of six months.

On November 3, 2004, the petitioner pleaded guilty to

3

Assault in the Second Degree in violation of N.Y. Penal Law § 120.05[1] pursuant to a plea agreement.  The petitioner admitted that he had assaulted the victim by sticking his fingers down her throat with such force as to cause her injury.  The state supreme court entered judgment convicting the petitioner, pursuant to the plea agreement on March 15, 2005.  The petitioner was sentenced to fourteen years to life imprisonment.

The petitioner, represented by new counsel, appealed his conviction to the Appellate Division. In his appellate brief, the petitioner argued that the trial court erred (1) in denying his motion to dismiss pursuant to C.P.L. 30.30, the statutory speedy trial claim, (2) by charging him as a persistent violent felony offender and (3) in denying his motion to suppress the identification because the identification procedure was unconstitutional and unduly suggestive.  In the petitioner's reply brief, in addition to the statutory speedy trial claim that had been raised at the trial level, appellate counsel also raised a federal constitutional speedy trial claim.

On May 19, 2009 the Appellate Division unanimously affirmed the judgment of conviction. <u>Jeffries</u>, 879 N.Y.S.2d 118.  The Appellate Division held that "by pleading guilty, [the petitioner] forfeited his statutory speedy trial claim." <u>Id.</u> at 118.  The court also held that the constitutional speedy trial claim was improperly raised for the first time in the reply

4

brief.  Moreover, the claim had not been raised before the trial court and was therefore unpreserved.  The court also noted that, "[a]s an alternative holding, we also reject it on the merits." Id. at 119.  The court found that the trial court properly denied the motion to suppress because, "[w]hile the transcript of the hearing is apparently lost, we conclude, based on the hearing court's detailed findings, that the showup was not unduly suggestive."  Id.  Finally, the Appellate Division found that the challenges to the petitioner's persistent violent felony offender adjudication were unpreserved, and alternatively rejected them on the merits.  Id.  The petitioner's application for leave to appeal to the New York State Court of Appeals was denied on August 17, 2009.  See Jeffries, 914 N.E.2d 1017 (N.Y. 2009).

   By pro se papers dated April 22, 2010, the petitioner sought a writ of error coram nobis in the Appellate Division.  In his application for a writ of error coram nobis, the petitioner claimed ineffective assistance of appellate counsel for failure to argue that the arresting officer did not have probable cause to detain the petitioner and for failure to argue ineffective assistance of trial counsel based on failure to preserve a constitutional speedy trial claim.  The Appellate Division denied the motion for writ of error coram nobis in an order dated August 17, 2010, and leave to appeal to the New York

5

Court of Appeals was denied on November 22, 2010. (Killian Decl. Exs. 10, 11)

The petitioner brings this petition for a writ of habeas corpus alleging the same grounds brought in his application for a writ of coram nobis.

**II.**

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief to a state prisoner on a claim that was adjudicated on the merits in state court only if it concludes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); see also Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006).

A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and

6

arrives at a result opposite to" the Supreme Court's result. Williams v. Taylor, 529 U.S. 362, 405 (2000).

A state court decision involves "an unreasonable application of . . . clearly established Federal law" when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case. . . ." Jones v. Walsh, No. 06 Civ. 225, 2007 WL 4563443, at *5 (S.D.N.Y. Dec. 27, 2007) (quoting Williams, 529 U.S. at 407-08). To meet that standard, "the state court decision [must] be more than incorrect or erroneous . . . [it] must be objectively unreasonable." Jones, 2007 WL 4563443, at *5 (quoting Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). "[I]t is well established in [this] circuit that the objectively unreasonable standard of § 2254(d)(1) means that [a] petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." Cotto v. Herbert, 331 F.3d 217, 248 (2d Cir. 2003)(internal quotation marks omitted).

Because the petitioner is proceeding pro se, his petition is "read liberally and should be interpreted 'to raise the strongest arguments that [it] suggest[s].'" Graham v. Henderson, 89 F.3d 75, 79 (2d Cir.1996)(quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir.1994)); see Brito v. Brown, No. 09 Civ. 5754, 2011 WL 1542516, at *2-3 (S.D.N.Y. Apr. 21, 2011).

7

**III.**

The petitioner claims that he was denied effective assistance of appellate counsel.

To establish a claim of ineffective assistance of counsel, the petitioner must show both that (1) his counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time, and (2) his counsel's deficient performance was prejudicial to his case. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Bunkley v. Meachum, 68 F.3d 1518, 1521 (2d Cir. 1995).

To meet the first prong of the Strickland test, the petitioner must establish that his appellate counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687.  There is a "strong presumption" that appellate counsel's conduct fell within the broad spectrum of reasonable professional assistance, and a petitioner "bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (citing Strickland, 466 U.S. at 688-89).  Appellate counsel is not obligated to "raise every nonfrivolous issue that the defendant requests." Jameson v. Coughlin, 22 F.3d 427, 429

8

(2d Cir. 1994) (quoting Jones v. Barnes, 463 U.S. 745, 754 n. 7 (1983)).  Instead, the petitioner must demonstrate that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000)(quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)); see also Redd v. Woughter, 09 Civ. 9819, 2010 WL 4983169, at *1 (S.D.N.Y. Dec. 3, 2010).

To meet the second prong of the Strickland test, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694; see also Redd, 2010 WL 2010 WL 4983169, at *2.

**A.**

On a habeas petition, "a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see also Williams v. Artus, 691 F. Supp. 2d 515, 523 (S.D.N.Y. 2010).  Here, the petitioner argues that no

9

presumption of correctness should be afforded to the decision of the Appellate Division in rejecting his coram nobis motion because the transcript of the suppression hearing was apparently lost.  He argues that there should be an evidentiary hearing to reconstruct the facts relevant to his detention at the hospital.  However, the trial court made detailed factual findings concerning the circumstances of the petitioner's intitial detention at the hospital.  The petitioner had every opportunity to challenge those findings in his direct appeal.  The Appellate Division accepted those detailed findings at the time it affirmed the petitioner's conviction, despite the absence of a transcript.  Thereafter, the petitioner had the opportunity to present his version of the facts to the Appellate Division in support of his motion for a writ of error coram nobis, and indeed provided a detailed description of the testimony at the suppression hearing.  See (Killian Decl. Ex. 8 ("Coram Nobis Mot.)).  The petitioner does not explain how any of the detailed findings of fact by the state trial court were incorrect or inconsistent with his description of the facts.  Because the state court record, including the findings by the trial court and the briefs on the coram nobis petition, contains ample information that shows the record before the state court, see Douglas v. Portuando, 232 F. Supp. 2d 106, 108 n.1 (S.D.N.Y. 2002), the record is sufficient to resolve the petitioner's

claims, and the findings by the state court are entitled to a presumption of correctness.

**B.**

The petitioner alleges two instances of ineffective assistance of appellate counsel: the failure to argue that the petitioner's Fourth Amendment rights had been violated by his detention, and the failure to argue that trial counsel had been ineffective in failing to argue the petitioner's speedy trial claim as a constitutional violation.

The petitioner's appellate counsel argued that the show-up identification was unreasonably suggestive, but did not argue that the detention of the petitioner for purposes of that immediate show-up was unconstitutional under the Fourth Amendment. The petitioner argues that the failure to make the Fourth Amendment argument was ineffective assistance of appellate counsel because there was no probable cause to arrest the petitioner. The failure to make this argument did not rise to the level of ineffective assistance of counsel because there was, as the trial court found, probable cause to arrest the petitioner.

Immediately after Officer Mattison heard the defendant yell "someone get the police, get a doctor," he heard a doctor yell

11

"get that guy," and pointed at the petitioner; the petitioner fled and Officer Mattison pursued him. (Suppression Op. at 1-2.) Officer Mattison also saw a woman to his left "with blood on her mouth, hands and face," who was later identified as the victim. Id. at 1. After chasing the petitioner, Officer Mattison noticed that the petitioner "had blood on both his hands and his coat." Id. at 2. The petitioner does not deny any of these facts, but argues that the fact that he had blood on him does not raise suspicion because the events occurred in an emergency room, where "a person with blood on them is not an unusual sight." (Coram Nobis Mot. at 14.) The inference, however, was created not only by the blood on the petitioner, but also by the circumstances of the events, including the petitioner's fleeing, a victim covered with blood in the vicinity, and the doctor calling "get him" and pointing to the petitioner. As the trial court reasonable found:

> Those observations taken as a whole, gave the officer more than probable cause to believe that a crime had been committed and that the defendant had committed that crime. Based upon this, the officer was more than justified in stopping and detaining the defendant pending further investigation into what had occurred and whether the defendant could be identified as the individual involved.

(Suppression Op. at 3.); see also Nadal v. City of Yonkers, No. 96-2412, 1996 WL 7215356, at *1-2 (2d Cir. Dec. 16, 1996) (summary order); Morgan v. Superintendent, 88 F. Supp. 2d 312, 317-318 (S.D.N.Y. 2000).

Under the Strickland test, failure to raise this claim was neither objectively unreasonable, nor prejudicial to the petitioner's case.  There was probable cause to detain the petitioner and therefore a Fourth Amendment claim would have been without merit. Moreover, the petitioner suffered no prejudice by appellate counsel's failure to raise this claim.

c.

Next, the petitioner argues that his appellate counsel was ineffective by failing to argue ineffective assistance of trial counsel.  The petitioner alleges that his trial counsel was ineffective because she failed to argue the petitioner's speedy trial claim as a constitutional violation at the trial level. The petitioner argues that had appellate counsel argued ineffective assistance of trial counsel the constitutional speedy trial claim would have been preserved.

While it is correct that the constitutional speedy trial claim was not preserved by trial counsel, failure to do so was not unreasonable and did not prejudice the petitioner in any way because the claim was without merit.

In Barker v. Wingo, 407 U.S. 514 (1972), the Supreme Court enumerated four factors which a court should assess in

13

determining whether a defendant has been deprived of his Sixth Amendment right to a speedy trial: (1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant.  Id. at 530.  "No one of these factors, however, is 'either a necessary or sufficient condition to the finding of a deprivation of the right,' and courts must still engage in a sensitive balancing process whereby the conduct of both the prosecution and the defendant are weighed."  Rayborn v. Scully, 858 F.2d 84, 89 (2d Cir. 1988) (quoting Barker, 407 U.S. at 530); see also United States v. Chen, No. 97 Cr. 763, 1999 WL 194749, at *6 (S.D.N.Y. Apr. 7, 1999).

   The petitioner argues that his speedy trial claim was "viable" and should have been argued both statutorily and constitutionally.  (Coram Nobis Mot. at 17.)  The only argument that the petitioner makes in support of this assertion, however, is that the government's concession that six months passed between the petitioner's arrest and the petitioner's guilty plea indicates that the petitioner's speedy trial rights had been violated.  The petitioner makes no attempt to argue the Barker factors, and has not presented any viable argument that a constitutional speedy trial claim would have been successful.

   Indeed, under the Barker factors, the petitioner cannot show that he was deprived of his constitutional right to a

14

speedy trial. First, the trial court held that a delay of only one hundred and twelve days was attributable to the prosecution. This length of time is not presumptively prejudicial. See Chen, 1999 WL 194749, at *6 (holding that a 121-day delay in bringing a defendant into federal custody did not constitute deprivation of right to speedy trial when the balance of the Barker factors do not indicate that the defendant has been deprived his right to a speedy trial). Indeed, this delay may not even trigger analysis of the remaining factors. See Vasquez v. Walker, No. 01 Civ. 8032, 2004 WL 594646 at *5 (S.D.N.Y. Mar. 25, 2004)(holding that a delay of "a little over six months" is not presumptively prejudicial and thus "the petitioner's constitutional speedy trial rights were not implicated" and noting that a delay of "a year in most cases" is necessary for a "presumptively prejudicial delay").

As to the reason for the delay, the trial court noted that "it appear[ed] that much of the delay in the case [was] attributable to requests for adjournments by the defense." This factor does not weigh in the petitioner's favor.

The third factor, the petitioner's assertion of his right to a speedy trial, also weighs against him because he raised his speedy trial claim more than two years after his arraignment. See United States v. LaGrua, Nos. 98 1323, 98-1568 1999 WL 385776, at *2 (2d Cir. June 11, 1999)(summary order). The

petitioner failed to assert his speedy trial rights "repeatedly and energetically." United States v. McGrath, 622 F.2d 36, 41 (2d Cir. 1980)(quoting United States v. Vispi, 545 F.2d 328, 334 (2d Cir. 1976)).

With respect to prejudice to the defendant, the Barker Court explained that prejudice should be assessed in the light of the interests which the speedy trial right was designed to protect:

> (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

Barker, 407 U.S. at 532 (footnote omitted). The petitioner makes no showing of prejudice from the delay. The petitioner fails to point to any evidence that was lost or any witnesses who became unavailable as a result of the delay. He has failed to show that he was prejudiced at all by the delay.

The Appellate Division's alternative holding on the petitioner's direct appeal that the constitutional speedy trial claim was without merit was correct. The subsequent decision rejecting the petitioner's claim of ineffective assistance of appellate counsel was also correct, and certainly not "contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United

16

States."  28 U.S.C. §2254(d)(1).

## CONCLUSION

For the reasons explained above, the petition for habeas corpus is **denied**. Because the petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).  The Clerk is directed to enter judgment dismissing the petition and closing this case.

SO ORDERED.

Dated:   New York, New York
         August /0 , 2011

John G. Koeltl
United States District Judge